IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| INSURED AIRCRAFT TITLE SERVICE, INC., | ) ) ) |
| Plaintiff, | ) ) |
| v. | ) Case Number CIV-05-1031-C ) |
| EMMONS AVIATION, L.L.C., et al., | ) ) ) |
| Defendants. | ) |

## MEMORANDUM OPINION AND ORDER

Now before the Court are three motions: a Motion to Remand filed by Defendant Summit Group, Inc. (Summit), another Motion to Remand filed by proposed intervener CNM Gulf Air, L.L.C. (CNM), and a Motion to Intervene filed by CNM. Plaintiff Insured Aircraft Title Service, Inc. (IATS) did not file a response to any of the three motions. Nevertheless, Defendant Emmons Aviation, L.L.C. (Emmons), who initially removed the case, timely filed responses to each motion. In turn, CNM filed a reply brief to Emmons' objections to the proposed intervention. Therefore, the motions are ripe for adjudication. The Court, after considering the parties' submissions and the applicable law, now **DENIES** both Summit's and CNM's Motion to Remand and **GRANTS** CNM's Motion to Intervene.

### BACKGROUND

On May 23, 2005, CNM entered into an Aircraft Purchase Agreement wherein CNM would sell a Gulfstream jet to Summit (CNM/Summit contract). That same day, Summit entered into a second, nearly identical Aircraft Purchase Agreement wherein Summit would sell the same Gulfstream jet to Emmons (Summit/Emmons contract). Both contracts contained

an identical provision requiring the purchaser to deposit $225,000.00 into an escrow account with IATS. According to CNM, Summit fulfilled its contractual obligation to CNM when Summit caused Emmons to fund the escrow account with the requisite amount. The sale of the Gulfstream jet did not proceed smoothly and another entity subsequently purchased the jet from CNM. The current dispute arose between CNM, Summit and Emmons due to their conflicting claims to the escrow account. IATS filed a petition for interpleader in the District Court of Oklahoma County, State of Oklahoma, but named only Summit and Emmons as defendants. To protect its interest in the escrow account, CNM filed a motion to intervene in state court.

CNM is a Nevada limited liability company whose members are not Michigan citizens.[1] Summit is a South Carolina corporation with its principal place of business in South Carolina. Emmons is a Michigan limited liability company whose members are all Michigan citizens.[2] IATS is a Delaware corporation with its principal place of business in Oklahoma. Emmons timely removed the action, along with the pending motion to intervene, from state court to federal court under diversity of citizenship jurisdiction, 28 U.S.C. § 1332, and in accordance

---

[1] CNM's citizenship is alleged in Emmons' response brief to CNM's motion to remand. (Def.'s Resp., Dkt. No. 21, at 7 n.3.)

[2] Neither the United States Supreme Court nor the United States Court of Appeals for the Tenth Circuit has addressed the issue of determining a limited liability company's citizenship for purposes of diversity jurisdiction. Other courts have uniformly held that a limited liability company is a citizen of the states in which its members are citizens. Tilzer v. Davis, Bethune & Jones, L.L.C., Case No. 03-2661-JWL, 2004 WL 825289, *1-*2 (D. Kan. April 15, 2004) (discussing the issue and listing circuit court cases). The Court finds Tilzer persuasive and concludes that the citizenship of Emmons is the citizenship of its members for purposes of diversity jurisdiction.

with 28 U.S.C. §§ 1441 and 1446.  CNM and Summit now move the Court to remand the action to state court.

## DISCUSSION

**I.    Summit's Motion to Remand the Action to State Court.**[3]

The core dispute is whether diversity jurisdiction may be created by realignment of the parties according to their real interests, thereby sustaining the action's removal from state court to federal court.  Emmons argues that diversity jurisdiction exists once the Court realigns the parties according to their real interests; therefore, Emmons' removal of the action to federal court is proper.[4]  Summit contends that Emmons may not remove the action and proffers three arguments in support:  that Emmons may not realign the parties on its own initiative without filing a motion or obtaining a court order realigning the parties; that Emmons failed to obtain the consent of all defendants prior to removal; and that Emmons inadequately pleaded the necessary facts in its notice of removal to establish diversity jurisdiction.  Summit's arguments are unavailing.

      **A.    Summit's First Argument–Emmons' Realignment of the Parties Is Improper.**

Summit contends that Emmons' attempt to realign itself as the only defendant is improper, as Emmons failed to file a motion and obtain a court order realigning the parties

---

[3] Summit adopted by reference all arguments contained in CNM's motion to remand. (Mot. to Remand, Dkt. No. 18, at 3.)  The Court addresses Summit's motion first as it was an original party to the action filed by IATS.  See Wisconsin Dep't of Corr. v. Schacht, 524 U.S. 381, 390 (1998).

[4] The litigants do not dispute that the requisite amount is in controversy or that their citizenship is diverse as required by the diversity statute, 28 U.S.C. § 1332.

prior to removing the action. Contrary to Summit's assertion, it is unnecessary for Emmons to accomplish either act prior to removing the action. Federal courts are obligated to determine the existence of diversity jurisdiction before adjudicating an action. Basso v. Utah Power & Light Co., 495 F.2d 906, 909 (10th Cir. 1974). This determination includes the realignment of the parties based upon their real interests regardless of labels placed upon the parties by the litigants themselves or the state court. See Farmers Alliance Mut. Ins. Co. v. Jones, 570 F.2d 1384, 1387 (10th Cir. 1978); Hann v. City of Clinton, Okla., 131 F.2d 978, 981 (10th Cir. 1942). Indeed, the Court's duty is "'to look beyond the pleadings, and arrange the parties according to their sides in the dispute.'" City of Indianapolis v. Chase Nat'l Bank, 314 U.S. 63, 69 (1941) (quoting Dawson v. Columbia Ave. Sav. Fund, Safe Deposit, Title & Trust Co., 197 U.S. 178, 180 (1905)); see 13B Charles Alan Wright et al., Federal Practice and Procedure §§ 3605, 3607 (2d ed. 1984).

### 1. Realignment of the Parties.

The Court determines removal jurisdiction predicated upon the diversity statute at the time IATS filed its petition in state court.[5] Wisconsin Dep't of Corr. v. Schacht, 524 U.S. 381, 390 (1998). For realignment purposes, the Court must determine the real parties in interest and the principal purpose of the suit. See City of Indianapolis, 314 U.S. at 69.

---

[5] CNM was not a party to this action when IATS filed its petition in state court, thus CNM's citizenship is of no effect to the Court's determination of diversity jurisdiction. Additionally, the Court must first validate its subject matter jurisdiction before addressing CNM's motion to intervene. Without jurisdiction, the Court lacks the power to rule on any substantive motions. Cunningham v. BHP Petroleum Great Britain PLC, ___ F.3d ___, ___, 2005 WL 2787567, *6 (10th Cir. Oct. 25, 2005).

Diversity jurisdiction may only be founded upon the citizenship of parties having a real and substantial interest in the controversy. Navarro Sav. Ass'n v. Lee, 446 U.S. 458, 460-61 (1980). The citizenship of nominal or formal parties with no real interest in the controversy will be disregarded. Id. Here, IATS acted as a depository ultimately responsible for the delivery of the funds to the rightfully entitled party. In addition, IATS has disclaimed all rights to the funds and is not an indispensable party. As a result, the Court finds that IATS is a formal party whose citizenship is immaterial for determining diversity jurisdiction. Salem Trust Co. v. Mfrs.' Fin. Co., 264 U.S. 182, 189-90 (1924).

The principal purpose of IATS' interpleader action is clear–to determine the rightful owner of the funds in dispute. The Court finds that the real dispute is between Emmons and Summit, thus they may be realigned as opposing parties. Therefore, the Court turns to the issue of the proper designation of each party as either plaintiff or defendant.

In Emmons' Notice of Removal, it seeks to realign Summit as plaintiff while keeping the designation of defendant. In this instance, either party could have sought removal and realignment, as IATS filed the original suit in Oklahoma state court and neither party is a citizen of Oklahoma. Additionally, either party could have initiated legal action in the United States District Court for the Western District of Oklahoma. Summit has not presented, and the Court's research has not uncovered, any reason why Emmons' desire to proceed in federal court as the defendant should not be honored; therefore, the Court designates Summit as the realigned plaintiff in this action. See generally City of Indianapolis, 314 U.S. at 74-76 (discussing the alignment of the parties with respect to their real interests).

**B.  Summit's Second and Third Arguments–No Consent/Inadequate Pleading.**

For its second argument, Summit contends that Emmons did not acquire the consent of all defendants in the interpleader action filed in state court. This argument fails as Summit now occupies the position of plaintiff; therefore, Emmons, as the sole defendant, need not obtain its approval prior to removal. See Chicago, Rock Island & Pac. Ry. Co. v. Martin, 178 U.S. 245, 248 (1900); Cornwall v. Robinson, 654 F.2d 685, 686 (10th Cir. 1981).

For its third argument, Summit contends that Emmons' jurisdictional averments in its notice of removal are inadequate. This argument fails as Emmons corrected its deficient jurisdictional averments in its amended notice of removal. (Def.'s Am. Notice of Removal, Dkt. No. 23, at 2 ¶¶ 5, 6.)

Emmons and Summit are of diverse citizenship and the requisite amount is in controversy. Based upon the realignment of the parties according to their real interests, the Court finds that Emmons properly removed this action from state court to federal court under the diversity statute; therefore, the Court maintains subject matter jurisdiction over this action.

**II.  CNM's Motion to Intervene.**

This motion's core dispute is whether CNM may intervene as of right in accordance with Fed. R. Civ. P. 24(a). Emmons argues that, while the Gulfstream jet may be the same in both transactions, the escrow account is not. Therefore, Emmons concludes that CNM does not have an interest that will be impaired in this particular action. Emmons further concludes that any interest CNM may have would flow through Summit and be adequately represented. The Court is not persuaded by Emmons' arguments.

A.      **Intervention Under the Federal Rules of Civil Procedure.**

Intervention in an ongoing action is authorized by Rule 24.[6]  For CNM to intervene as of right requires (1) that it submit a timely application; (2) that it claims an interest in the object which is the subject of the action; (3) that its interest be impeded or impaired as a practical matter; and (4) that its interest is not adequately represented by either Emmons or Summit. Utah Ass'n of Counties v. Clinton, 255 F.3d 1246, 1249 (10th Cir. 2001).  The Tenth Circuit "has tended to follow a somewhat liberal line in allowing intervention." Nat'l Farm Lines v. Interstate Commerce Comm'n, 564 F.2d 381, 384 (10th Cir. 1977).

1.      **CNM's Timely Application.**

IATS filed its petition for interpleader on August 4, 2005.  (Def.'s Am. Notice of Removal, Ex. B, at 1.)  Twenty-two days later, CNM filed its motion to intervene.  (Id. Ex. E, at 1.)  Here, CNM was certainly not dilatory in seeking intervention during the early stage of the litigation; moreover, Emmons has not pointed out how it would suffer prejudice or any unusual circumstances militating against CNM's intervention.  Utah Ass'n of Counties, 255 F.3d at 1250-51 (listing factors used to determine timeliness under Rule 24).  The Court finds that CNM submitted a timely application for intervention.

---

[6]     Upon timely application anyone shall be permitted to intervene in an action: . . . (2) when the applicant claims an interest relating to the property or transaction which is the subject of the action and the applicant is so situated that the disposition of the action may as a practical matter impair or impede the applicant's ability to protect that interest, unless the applicant's interest is adequately represented by existing parties.

Fed. R. Civ. P. 24(a).

### 2.     CNM's Interest in the Escrow Account.

CNM must have an interest that is direct, substantial, legally protectable, and related to the property that is the subject matter of the action. Utah Ass'n of Counties, 255 F.3d 1251-52. Here, the property in dispute is the escrow account currently controlled by IATS. CNM claims that the CNM/Summit contract obligated Summit to fund the IATS escrow account and that the funds in the escrow account stem from Summit fulfilling its obligation. The Court finds that CNM has the requisite interest and that it is sufficiently related to the subject of the action to support intervention as of right.

### 3.     CNM's Interest Will Be Impaired or Impeded.

The burden of demonstrating impairment of an interest is minimal–the mere possibility that the adjudication of IATS' interpleader action will impair or impede CNM's ability to protect its interest in the escrow account is sufficient. Utah Ass'n of Counties, 255 F.3d at 1253. Here, there is only one escrow account but two ultimate claimants–CNM and Emmons. As a result, the Court finds that CNM's contractual interest in the escrow account will be impaired if intervention is denied and Emmons' requested relief is granted.

### 4.     CNM Is Not Adequately Represented by the Existing Parties.

The burden of demonstrating inadequate representation is also minimal–the possibility that the interests of CNM and the other parties may diverge is sufficient. Utah Ass'n of Counties, 255 F.3d at 1254. However, if CNM and an existing party have an identical ultimate objective in the litigation, a presumption of adequate representation arises. Id. at 1255. Here, CNM's objective is clearly divergent from that of Emmons'. CNM's objective is also

divergent from Summit's objective. Summit seeks only indemnification and lays claim to the escrow account only to the extent it may be found liable to CNM (Def.'s Am. Notice of Removal, Ex. F, at 3, ¶ 8), whereas CNM seeks exclusive ownership of the escrow account under the terms of the CNM/Summit contract. Moreover, Summit has yet to voice its intent to defend CNM's interest in this action–its silence is deafening. Id. at 1256. Consequently, the Court finds that CNM's interest may not be adequately represented by an existing party.

CNM meets all prerequisites for intervention as of right under Rule 24. In light of the fact that CNM's objective in this action is diametrically opposed to that of Emmons', and that Summit has filed a claim against Emmons for indemnification if Summit is found liable to CNM, the Court designates CNM as the intervener plaintiff. See generally City of Indianapolis, 314 U.S. at 74-76 (aligning parties according to their real interests in the litigation). As plaintiff, CNM's intervention is not contrary to the jurisdictional requirements of the diversity statute. In addition, the Court exercises supplemental jurisdiction over Summit's cross-claim. 28 U.S.C. § 1367.

**III.   CNM's Motion to Remand the Action to State Court.**

CNM and Summit proffer the same arguments for remand. As intervener plaintiff, CNM's arguments fail for the reasons discussed above.

#### CONCLUSION

The Court maintains both diversity and supplemental jurisdiction over the claims in this action even after the proper realignment of the parties and the designation of CNM as intervener plaintiff. Therefore, Summit's Motion to Remand [Dkt. No. 18] is **DENIED**,

CNM's Motion to Intervene is **GRANTED**, and CNM's Motion to Remand [Dkt. No. 16] is **DENIED**.

IT IS SO ORDERED this 8th day of November, 2005.

_____
ROBIN J. CAUTHRON
United States District Judge